OF THE STATE OF ARKANSAS.    **19**

TERM, 1859.]        Byrd & wife et al. vs. Lipscomb et al.

BYRD & WIFE ET AL. VS. LIPSCOMB ET AL.

The construction given to the statute of Descents and Distributions, in *Kelly's Heirs et al. vs. McGuire & wife et al.* 15 *Ark.* 590, as to personal property, where the intestate dies without descendants, adhered to.

A guardian being largely indebted to his ward, obtained an order of the Probate Court authorizing him to convey to his ward a tract of land, at a certain price, to be credited in his guardian's account: the guardian, after remaining in possession of the land for more than a year, removed, leaving the ward in possession, with an overseer, under his control, but neither conveyed the land to the ward, nor settled his guardian's account, so as to obtain credit for the price; upon the death of the ward, before his arrival at age, his administrator, believing the guardian's bond to be insufficient, took a deed for the land from the guardian, and credited the price on his indebtedness as guardian, charging interest thereon up to the time of the conveyance: *Held,* that the order of the Probate Court, or any act done by the parties prior to the death of the intestate, did not change the nature of the indebtedness of the guardian to the ward; that it came to the hands of the administrator as personal estate, and should have been so treated in making distribution.

*Appeal from the Circuit Court of Poinsett County, in Chancery.*

Hon. GEORGE W. BEAZLEY, Circuit Judge.

Before Mr. Chief Justice ENGLISH, and Mr. Justice BATSON.

FOWLER & STILLWELL, for the appellants.

BYERS & McCONAUGHEY, for the appellees.

The decree of the Circuit Court is fully sustained by the law as declared by this Court in the case of *Kelly's Heirs vs. McGuire et al.,* 15 *Ark. Rep.* 555. There is no new question raised in this case, and it is not to be presumed that a case that had

undergone the consideration and deliberation of that case is to be overruled.

It cannot, with any plausibility, be contended that Wm. R. Lipscomb died seized or possessed of any real estate. The order of the Probate Court to Cross, his guardian, to sell to him the 640 acres of land, was merely a license to Cross. It was no contract made by Cross with Lipscomb, which Lipscomb or his heirs or legal representatives could have enforced or compelled Cross, in a Court of equity or otherwise, to convey said lands to Lipscomb. And Cross did not even act under the license given him by the Probate Court; but, by the answer of Caldwell, which is admitted to be true, Cross repudiated that license and authority, and refused to comply with it; and that he, Caldwell, as the administrator, took the land in part payment of a debt due the estate on account of the insolvency of Cross, the guardian, and his securities.

Mr. Justice BARSON delivered the opinion of the Court.

This was a bill filed on the chancery side of Poinsett Circuit Court, by appellants, against the appellees, for partition and distribution of the estate of William R. Lipscomb, deceased.

The cause was brought to hearing on the original and amended bill; bill taken *pro confesso* as to Jordan R. Lipscomb, who had failed to answer; answers of the other defendants, exhibits, replications, and an agreed statement of facts, signed by the solicitors of the respective parties, filed, and ordered to be made a part of the record in the cause.

From the pleadings and agreed statement of the facts, we ascertain that William R. Lipscomb departed this life intestate, in the county of Poinsett, on the 15th day of December, 1854, leaving neither wife, child, father, mother, brother, sister, grandfather or grandmother, him surviving.

That said William R., at the time of his death, owned a number of slaves, which he had acquired in the State of Tennessee, one moiety as distributee of the estate of his deceased

father, the other as distributee of the estate of his sister of the half-blood in the paternal line.

That subsequent to the acquisition of his property, one Jesse V. Cross, intermarried with the mother of said William R., in the State of Tennessee, and was there appointed guardian of said William R.

That Cross, after that time, removed to Poinsett county, resided upon a farm containing 640 acres, which is described in the pleadings; that he brought with him from Tennessee the said William R., and all his property, and kept the property in his possession, on the farm aforesaid, until the winter of 1853,—'4, when he moved to another plantation in the same county, and left the said William R. and his negroes on the farm above mentioned, in charge of William R., and an overseer, employed by Cross, and subject to his control—the said William R. then being within the age of twenty-one years.

That at the January term of the Probate Court of said county of Poinsett, A. D. 1852, Cross, as guardian of William R., was indebted to his said ward, about the sum of $10,500, for the hire and increase of the slaves of his said ward, as appeared from the settlement of his accounts with the Court.

That at said term he obtained an order of that Court, authorizing him to purchase for said William R., or to convey to him, the farm upon which said Cross then lived, containing 640 acres, at the sum of $8,000, and for which amount Cross was to receive credit on his account as guardian, as aforesaid.

That the farm mentioned in said order was the same upon which Cross left William R. and his negroes and overseer, as above stated.

That William R., and his negroes, and said overseer, remained upon said farm under Cross, until the death of said William R.

That Cross, up to the death of said William R., had not made him a deed to, or given him any evidence of right, to said lands, and the title thereto remained in Cross up to the time of the death of said William R.

That Cross, up to the death of William R., or subsequent thereto, made no report to the Probate Court of his proceedings upon the before mentioned order as to said lands.

That after the death of said William R., (who died within the age of twenty-one years), Colbert Caldwell, who is made a defendant to the bill, was duly appointed administrator of his estate, and proceeded to collect the property belonging thereto.

That said Caldwell, as administrator, finding that said Cross, as late guardian, was indebted to the estate of his intestate, in a sum over ten thousand dollars, and believing the bond of said guardian worthless, and insufficient to secure the payment of said sum, took from Cross and wife, in trust, etc., a deed for the 640 acres of land above mentioned, for which he allowed him the sum of $8,000—which was placed as a credit to his said indebtedness; that, at the same time, he purchased of said Cross, in trust, other 80 acres of land, at the price of $400—for which he also allowed him a credit; and the balance of the original sum due by Cross to his ward, including the interest due thereon, was then secured to said administrator by the promissory notes of said Cross and others.

That the purchases made by administrator were for the interest of the estate, and that the lands and negroes are in no wise necessary for, but are incumbrances to, the administration

That appellants, John T. Lipscomb, Mary E., wife of Edward Byrd, Elizabeth V. Lipscomb, Jane, wife of Thomas M. Mosely, Theophilus G. Lipscomb. Margaret E. Lipscomb, Sarah A. B. Lipscomb, and Harriet N. Lipscomb, are cousins of said William R., being the children of one Richard Lipscomb, deceased, who was a paternal uncle of said William R.; that defendants Jordan R. Lipscomb is a paternal uncle, and Jeremiah Graves, Mary, wife of Thomas Graves, Ibby, wife of Hosea McNeil, Solomon Graves, and Elizabeth Lee, are his maternal uncles and aunts.

Upon hearing, the chancellor decreed that the whole of said

estate, and each and every part thereof, be taken as personal estate, so far as the manner of descents and distributions be concerned; and decreed a distribution thereof per *stirpes* to complainants, who were in unequal degree, and per *capita* to defendants (save Caldwell), who were in equal degree. Complainants appealed.

Appellants, in their bill, claim that they are entitled to the one equal half, and defendant, Jordan R. Lipscomb, is entitled to the other moiety of the entire estate—the said Jordan R. being a paternal uncle, and appellants being the children, and husbands of the children of the only other uncle of said William R. in the paternal line.

The construction given to our statute of descents and distributions in the case of *Kelley's heirs et al. vs. McGuire & wife and others*, 15 *Ark.* 599: " that personal property, where there were no descendants, should go to collaterals in the same way it would have gone to descendants, if any; that is to say, *per capita*, if in equal degree, and *per stirpes*, if in unequal degree, without enquiry as to how the property was acquired by the intestate;" and which we hold to be a correct interpretation of the statute, settles the principal questions in this case.

The only remaining question for our determination is, whether the 640 acres of land, above mentioned, should, for the purpose of descents and distributions, have been treated as real or personal estate. Appellants' counsel, in this Court, insist: that the 640 acres of land were owned by deceased at the time of his death, and being a new acquisition should go to the paternal uncles, to the exclusion of the maternal side; that Cross, under the sanction of the Probate Court, had sold this land to his ward at a certain sum, in extinguishment of so much of his indebtedness, put him in possession, that he remained in possession, *under his contract*, until his death, and could, at any time before his death, have enforced specific performance; and that the conveyance to Caldwell, the administrator, in trust, for the benefit of the heirs, and passing credit to Cross for the amount,

was a consummation of the original contract in form, but added nothing in equity to the rights of deceased.

If there was a contract for the sale and purchase of this land, as insisted by appellants, it was made by Cross, the guardian, acting in his own behalf, of the one part, and the Probate Court, acting in behalf of the ward of Cross, of the other part.

Without stopping to enquire into the power of the Probate Court to make such contract, we shall content ourselves with the enquiry as to whether it was in fact made.

The order of the Probate Court, upon its face, certainly does not disclose a contract that would have been enforced against Cross in a Court of equity. Nor do we conceive that any thing was subsequently done by the parties, to give it that character, or to show that they even so regarded or intended it.

The order was made at January term, 1852; Cross was then residing upon the farm, and continued thereon until the winter of 1853,–'4; he then removed to another plantation, leaving intestate (who was a minor, and under his control as guardian,) upon the farm, with his negroes, in charge of intestate and an overseer employed by Cross and under his control, who resided thereon until the 15th December, 1854, at which time he died. During all this time, Cross had made no conveyance of the land, or claimed credit for the price thereof; and subsequently conveying the farm to the administrator, at the same price he had demanded near three years previous to that time; and permitting interest to be computed from the date of the order of the Probate Court, up to the time of making the conveyance, shows that he did not make the conveyance in consummation of what he supposed a previous contract. And taking into consideration the relative position of the parties, added to the silence of the record as to the fact that intestate was ever informed of this supposed purchase, consulted with reference thereto, or having claimed the land, or done any act inconsistent with the title of Cross, we cannot admit that he was holding possession under contract.

We are clearly of the opinion that the order of the Probate Court, or any act thereafter done by the parties, prior to the death of said intestate, did not change the nature of the indebtedness of Cross to the intestate; that it came to the hands of the administrator as personal estate, and should have been so treated in making distribution.

Finding no error in the decree of the Court below, it must be affirmed.