## WATSON v. HARPER.

### 4-3391

Opinion delivered March 5, 1934.

*Lee Miles*, for appellant.
*Pat L. Robinson*, for appellee.

JOHNSON, C. J. To restrain Fred Watson, State Revenue Commissioner, from collecting an alleged excessive license tax fee under act No. 7, passed and approved at the 1933 special session of the Arkansas Legislature, this proceeding was instituted by appellee in the Pulaski Chancery Court.

By stipulation of counsel, the facts were agreed upon as follows: "That act No. 7 is an act passed by the special session of the General Assembly of the State of Arkansas for the year 1933, for the purpose of permitting and regulating the sale of beer and wine under certain regulations, as provided by said act, in the State of Arkansas. That the plaintiff has paid to the defendant, Commissioner of Revenue, the sum of two hundred fifty dollars ($250) for permit to engage in the wholesale beer distributing business.

"That plaintiff maintains warehouses in the cities of Little Rock, Hot Springs, El Dorado and Pine Bluff

among seventeen counties; that each of said distributing points, towit: Little Rock, Hot Springs, El Dorado and Pine Bluff, distribute beer to retail dealers in other counties than those in which the distributing point is located. That the defendant is attempting to collect an additional fee of two hundred fifty dollars ($250) for each warehouse, or fifty dollars ($50) per county for each distributing point, and $50 for each county served from said warehouses.

"It is agreed between the parties that this stipulation may be filed and considered by the court as evidence in this action, each party reserving the right to introduce additional evidence, if it wishes to do so."

Upon trial, the chancellor determined the issues in favor of appellee, and directed issuance of a permanent injunction enjoining and restraining the State Revenue Commissioner from collecting or endeavoring to collect from appellee additional license fees during the fiscal year ending July 1, 1934. This appeal brings in question the decree thus entered.

The chancellor construed act No. 7 to mean that, when any one broker, distributor or wholesale dealer paid to the State a license fee of $250, such broker, distributor or wholesale dealer was thereby authorized, privileged and licensed to establish and maintain wholesale warehouses or separate and distinct distributing points in any or all the seventy-five counties of the State.

Section 4 of act No. 7 of the special session of 1933, in part, provides:

"For the privilege of doing business respectively as herein below indicated there shall each fiscal year, beginning July 1st, be assessed, levied and collected:

"(A) For each wholesale dealer or broker, or distributor in light wine and/or beer a special tax of fifty (50) dollars for each county in which said broker, distributor or wholesale dealer operates, provided, that in no event shall said tax exceed two hundred and fifty ($250) dollars for any one broker, distributor or wholesale dealer."

Paragraphs B and C of § 4 deal with manufacturers' and retailers' license fees (which are not relevant to any issue here presented). Then follows this provision: "The tax shall be due and payable at each place where the business of wholesale dealer, manufacturer, distributor or retail dealer, as the case may be, is carried on."

The chancellor's construction of act No. 7 gives full effect to the proviso "that in no event shall said tax exceed $250, for any one broker, distributor or wholesale dealer," and completely ignores all the language preceding and following it. If this proviso were stricken from said act, it would definitely appear that any broker, distributor or wholesale dealer, who sought license thereunder, would be required to pay a fifty dollar license fee in each county in which he might operate. Thus if business were done by such broker, distributor or wholesale dealer in each of the seventy-five counties of the State, a license fee of $3,750 would be required for such privilege. This language, however, is restricted by the proviso which follows it, and which has been heretofore quoted. Following the proviso, but appearing in the same section of the act, is the following language: "The tax shall be due and payable at each place where the business of wholesale dealer * * * is carried on."

It has long been the established doctrine of this court to so construe statutes that they may have a reasonable effect, agreeably to the legislative intent. Every word, clause and sentence should be given effect, if possible, and, in construing the whole act, if the legislative intent is found to be different from the literal import of some of its terms, then the legislative intent should prevail. *Wilson* v. *Biscoe,* 11 Ark. 44; *State* v. *Jennings,* 27 Ark. 419; *L. R. & F. S. Ry. Co.* v. *Howell,* 31 Ark. 119; *Haglin* v. *Rogers,* 37 Ark. 495; *Doles* v. *Hilton,* 48 Ark. 307, 3 S. W. 193; *Ingle* v. *Batesville Gro. Co.,* 89 Ark. 378, 117 S. W. 241.

The language of the proviso "for any one broker, distributor or wholesale dealer," when considered and construed with all other provisions of act No. 7, makes it

definite and certain that the legislative intent was to make each separate wholesale warehouse or distributing point a separate unit for the assessment and collection of the license fees provided for in said act. We think the language, "any one broker," etc., has reference to the situs of the business transacted, instead of the broader meaning attributed thereto by the chancellor.

Moreover, when all provisions of act No. 7 are construed and harmonized in the light of the rule of construction, heretofore quoted, it clearly appears that it was the legislative intent that a broker, distributor or wholesale dealer, who has and maintains only one wholesale distributing warehouse, may, upon the payment of a license fee of $250, make deliveries of his products from such point only to any or all the seventy-five counties of the State. On the other hand, any broker, distributor or wholesale dealer who undertakes to establish more than one wholesale warehouse or distributing point in other counties of the State, and such additional warehouse undertakes to operate in five or more counties, an additional license fee of $250 is chargeable against each such distributing warehouse. In other words, it was clearly the intention of the Legislature to assess a license fee for the privilege of wholesaling light wines and beers a tax of $50 per county as a prerequisite to the establishment of a wholesale warehouse for such distribution; and, in the event such warehouse or distributing point operates or serves trade in more than one county, to charge an additional fee of $50 for each county so served up to a maximum of five counties. For instance, if appellee's Pulaski County warehouse serves five or more counties, the fee on this distributing point should be $250; if it serves or operates in less than five counties, the license fee should be $50 for each county served. License tax fees on appellee's warehouses and distributing plants located at Hot Springs, Pine Bluff and El Dorado should likewise be determined. For instance, the warehouse at Pine Bluff must, in any event, pay a license fee of $50. This gives the privilege of doing business in Jefferson County only. If products are distributed from this ware-

house to five or more counties, the license fee on the Pine Bluff warehouse should be $250. If this warehouse serves only four counties, the license tax fee should be $200. In other words, each separate wholesale warehouse or distributing point for light wines and beers must pay a tax of $50 for each county served up to a maximum of five counties, or a maximum license fee of $250.

Appellee's warehouses at Hot Springs and El Dorado should pay license fees in the same manner as heretofore indicated.

The agreed statement of facts filed herein shows that appellee has and maintains four separate and distinct warehouses or distributing points for the distribution of light wines and beers, and that these four warehouses operate in seventeen counties. From this agreed statement, we cannot determine the number of counties actually served by the Pulaski County warehouse. Neither can we determine the number of counties served by the Hot Springs, Pine Bluff or El Dorado warehouses. Therefore we are unwilling to undertake to determine the amount now due the State.

The cause will be reversed and remanded to the Pulaski County Chancery Court, with directions to hear testimony on the additional amount due the State as license tax fees by appellee, and to render judgment in favor of appellant therefor in conformity with this opinion.

McHaney and Butler, JJ., dissent.