DEAN *v.* STUCKEY, ADMR.

5-2689                                                        356 S. W. 2d 622

Opinion delivered April 30, 1962.

*John S. Mosby,* for appellant.

*J. G. Waskom* and *Gardner & Steinsiek,* for appellee.

PAUL WARD, Associate Justice. This appeal concerns certain questions of law which arose out of the administration of the estate of Joe Dean Goodin who died intestate, leaving real and personal property valued at approximately $400,000. It is important at the outset, in order to grasp the issues involved, to understand who

constituted the heirs of the deceased and their relationships, and also the nature of the property.

*Heirs.* Joe Dean Goodin died January 11, 1957, unmarried, leaving no children. The administration of his estate began in March, 1957. The deceased's mother, Myra C. Goodin, died April 28, 1957, and her estate is being administered under separate proceedings. Myra had a brother, J. J. Dean, who is now living. She also had a sister, Anna Williams, who is deceased, leaving three children. The above are referred to as the "Dean heirs".

The deceased's father, J. P. Goodin, who died in 1951 had one half-sister and three half-brothers. All of these are now dead. Two of them had one child each (now living); one had five children (now living); one had eight children one of whom is deceased, leaving six children (now living). These will be referred to as the "Bryan heirs".

*Property.* The property affected by the administration of deceased's estate, for the purposes of this opinion, can be designated as here set out. *Paternal ancestral*: An undivided one-half interest in 164.6 acres of land and 31.5 acres of land. *New acquisition*: 711.57 acres of land. *Personal property*: Among other things (a) On December 24, 1956 decedent leased 80 acres of land for the year 1957 and took a note for $1,950 due that fall; (b) On December 27, 1956 decedent leased the rest of the lands for the years 1957, 1958 and 1959 taking three notes, each in the amount of $21,250; (c) There was certain other income from the estate accruing during the administration.

After the probate judge had made a finding of heirship and after a final accounting had been made, the administrator, on March 29, 1961, filed his Petition for Distribution. Thereafter, on July 22, 1961, the judge issued a detailed memorandum opinion indicating what his rulings would be on all questions and issues involved. Based thereon a precedent for a decree was submitted by the Dean heirs (appellants) and another one was sub-

mitted by the administrator and the Bryan heirs (appellees), each setting out in detail the real estate interest and the personal property each beneficiary would receive, and also how the costs attending administration were to be apportioned. Where the two precedents were in agreement such instances will not be discussed or referred to in this opinion. The court, however, approved the precedent submitted by appellees and rendered a decree accordingly.

On appeal appellants set out nine separate points for a reversal, but we have decided that all essential issues can be disposed of under two separate specific points and a third general point.

*One.* The trial court divided the *new acquisition* lands *per stirpes* among the Dean heirs and the Bryan heirs—that is, the court gave a one-sixth undivided interest each to the brother and sister (or the heirs of each) of decedent's mother, and a one-sixth each to the three brothers and one sister (or the heirs of each) of decedent's father. In so doing, we think, the court committed error. It is our conclusion that an undivided one-half interest in the *new acquisition* lands must go to the heirs of decedent's mother and that the other one-half interest must go to the heirs of decedent's father.

Ark. Stats. § 61-111 reads:

*"Descent where no father or mother.* The estate of an intestate, in default of a father and mother, shall go as follows: one-half to the brothers and sisters, and their descendants of the father; and the other one-half to the brothers and sisters, and their descendants, of the mother; provided, that if such line of either the father or the mother shall be extinct, then the entire estate shall go to such line of the other. This provision applies only where there are no kindred, either lineal or collateral, who stand in a near[er] relation, and does not apply to ancestral estates." (The word *near* should be *nearer.* See *Daniels* v. *Johnson, infra.*)

In the case of *Daniels* v. *Johnson,* 216 Ark. 374, 386-387, 226 S. W. 2d 571, in an exhaustive opinion, this Court said:

"It is as though § 61-111 read: 'The estate of an intestate, in default of [descendants, or brothers or sisters or their descendants, or] a father and mother, shall go as follows . . .' This gives § 61-111 its proper function, which is to define the manner of descent and distribution of non-ancestral estate under the third subparagraph of § 61-101.''

When § 61-111 is read in its entirety in conformity with the above quoted language there can be no doubt that it is controlling under the factual situation in the case under consideration, and that it dictates what our conclusion must be. Joe Dean Goodin's estate is in default of descendants, brothers and sisters, and father and his mother. Therefore, one-half of it must go to the three brothers and one sister (or their descendants) of his father, and the other one-half must go to the brothers and sister (or their descendants) of his mother.

Appellees' well reasoned and well presented contention is to the effect that this case is not controlled by § 61-111 but is controlled by §§ 61-101 and 61-110. It is certain that the issue presented is not without its perplexities. Harry E. Meek, in an exhaustive memorandum on the Law of Descent and Distribution written in 1961 and published in the Desk Book of the Arkansas Bar Association, in discussing Ark. Stats. § 61-101, said: "But where the intestate leaves no issue, either Sec. 61-110 or 61-111 must be consulted; and the relationship between the three sections has obfuscated Arkansas lawyers for more than one hundred years."

However, we think a careful study of the history of these sections and their relation to each other confirms the conclusion heretofore reached. Prior to the passage of Act 52 of 1933 the law preferred the paternal heirs over the maternal heirs. For example, Crawford and Moses Digest §§ 3471, 3480 and 3481 all preferred the paternal heirs, but said Act 52 changed those sections to put the paternal and maternal heirs on the same basis. Sections 3471 and 3480 were changed by said Act 52 to read the same as Ark. Stats. §§ 61-101 and 61-110 respectively. Section 3481 (C. & M. Dig.) was changed by

Act 52 to read as follows: "The estate of an intestate, in default of a father or mother, shall go to the brothers and sisters, per stirpes." It is apparent this section did nothing to clarify the issue under discussion. However, the above section was changed by Act 117 of 1937 to read the same as Ark. Stats. § 61-111 (heretofore copied). It is necessary now to consider certain language found in § 61-110 (relied on by appellees) which, in all material parts, reads as follows:

"*Descent where no descendants* . . . but if the estate be a new acquisition, it shall ascend to the father and mother for life in equal shares, and upon the death of one parent, the share enjoyed by such parent during his or her life shall pass to the sole surviving parent for life, and then, *both shares shall descend in remainder to the collateral kindred of the intestate in the manner provided in this act* [§§ 61-101—61-105, 61-107—61-113, 61-115—61-123]." (Emphasis added.)

The question then is: What section of the statute is referred to by the word "in the manner provided by this act"? It seems clear enough that the above quoted words must refer either to § 61-101 (3rd paragraph) or to § 61-111, because none of the other sections mentioned seem to have any relevancy. Section 61-101 is eliminated by the language quoted from the *Daniels* case, *supra.* This leaves only § 61-111 to supplement § 61-110. So, when § 61-111 is applied to the undisputed facts in this case, it seems clear to us that one-half of decedent's new acquisition lands passes to the Dean heirs and the other one-half passes to the Bryan heirs.

*Two. Rent Notes.* The trial court was correct (a) in giving the estate of Myra (mother of decedent) all rentals accruing, before her death, on the new acquisition lands for the year 1957, and (b) in giving the unaccrued rents (on the three notes for $21,250 each) to those who received the land, as their interests appear. The general rule in this connection is set out in 32 Am. Jur. *Landlord and Tenant,* §§ 447-448, at page 364. In the first section we find this:

"*Generally*.—Rents accrued before the death of the lessor do not descend to his heirs at law or pass directly to his legatees, but devolve upon his personal representative for administration and distribution as personal assets of his estate."

In the other section it is said:

"As a general rule, since rent to accrue is an incident of the reversion, upon the death of a lessor, who had reserved rent generally for the duration of the term, rents thereafter to accrue and to become payable either in money or in a share of the crops raised upon the premises do not devolve upon his executor or administrator for administration as a part of his personal estate, but descend at once, with the reversion, as real estate, to his heirs at law. . . ."

The above is true only where, as here, there is sufficient personal property in the hands of the administrator to pay debts and costs. In the case of *Phillips* v. *Grubbs,* 112 Ark. 562, 566, 167 S. W. 101, on rehearing, this same question of rentals was considered, and the Court said:

"The decree ought, however, to be modified with respect to the order on Grubbs to pay the rent to Frank A. Wright as executor of the estate of Mrs. Carr. It does not appear that the lands or the rents and profits thereof are necessary for the payment of debts; therefore, the heirs are entitled to collect the same."

See also, to the same effect, *Gailey* v. *Ricketts,* 123 Ark. 18, 184 S. W. 422 and *Deming Investment Company* v. *Bank of Judsonia,* 170 Ark. 65, 278 S. W. 634. We have carefully read the cases cited by appellants but find nothing to justify a conclusion that the said rent notes are personal property in the hands of the administrator to be distributed to them as such.

*Three.* The trial court made directives with reference to the payment of certain expenses incident to the administration, some of which are unchallenged. Appellants say the accountant's fee and the attorney's fee should be prorated "taking into consideration the value

of the real as against the personal property". In regard to the attorney's fee the trial court said:

"This charge, as allowed by the court, shall be pro-rated so as to charge the personal property with its correct share and those services relating to the land and its rent notes collected shall be charged to the land in proper portion of each interest therein."

As to the accountant's fee the court said:

"The court finds that this fee shall be charged to all in proportion to the interest of each in both real and personal property."

Appellants fail to point out any error in the court's directive and we cannot say any error exists. What constitutes correct or proper apportionment might depend on evidence showing what services the attorney and the accountant performed in their respective capacities. If any error has been made it can be called to the attention of the trial court on remand. The same thing can be done if, as appellants say, there are errors in the land descriptions.

The conclusions we have already reached relative to the heirs of the deceased call for an affirmance of the administrator's cross-appeal.

The decree of the trial court is therefore reversed in part and affirmed in part, as indicated herein, and the cause is remanded for further proceedings in accord with this opinion.