Jeannette J. Locke v. C. N. Cook and Matthew B. Cook

5-4745                                434 S.W. 2d 598

Opinion Delivered December 9, 1968

788

*Shaver, Tackett & James* by *Daman Young* for appellant.

*John C. Finley, Jr.* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal involves an order determining heirship of Nelle McCrary Reynolds, insofar as the parties to this proceeding are concerned. Appellees C. N. (Chalmer Nathan McCrary) Cook and Matthew A. (Matthew Alexander Locke) Cook are brothers. They instituted the proceeding claiming to be entitled to share in the estate of Mrs. Reynolds as second cousins on her paternal side, with the additional circumstance that their father and Mrs. Reynolds' father had been double first cousins. We will refer to them as ''McCrary heirs.'' While it was indicated in the court below that there might be others standing in the same (or nearer) degree of kinship with the decedent as

appellees in the McCrary line, this question has been reserved by the probate court. The petition was resisted by Jeanette Joyner Locke, the only surviving first cousin of Mrs. Reynolds. It also developed during the hearing that there were descendants of two brothers of Mrs. Locke who would be entitled to share with her, per stirpes, in any inheritance on the maternal side. We shall refer to these heirs, collectively, as the "Joyner heirs."

It was stipulated that the property involved was a new acquisition by Mrs. Reynolds, at least insofar as the parties involved are concerned. For the purposes of this proceeding, we may consider that Mrs. Reynolds died intestate.

The probate court held that both the "McCrary heirs" and the "Joyner heirs" were entitled to one-half of the estate. Although the probate judge considered this difficult question of first impression at length and reviewed the authorities exhaustively in an excellent memorandum opinion, he recognized that the matter was unsettled in Arkansas and actually encouraged this appeal in an order subsequent to that from which the appeal was taken. With all due respect, we reach a conclusion different from that of the trial court.

The solution of the problem depends upon the interpretation to be given our statutes of descent and distribution, particularly Ark. Stat. Ann. §§ 61-101 and 61-111 (1947). For a better understanding of the result we reach, these sections are reproduced as follows:

"61-101. General law of descent.—When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and

the widow's dower in the following manner:

First: To children, or their descendants, in equal parts.

Second: If there be no children, then to the father and mother in equal parts, or, if one parent be dead, then the whole to the surviving parent; if no father or mother, then to the brothers and sisters [or their descendants], in equal parts.

Third: If there be no children, nor their descendants, father, mother, brothers, or sisters, nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descendants in equal parts, and so on in other cases, without end, passing to the nearest lineal ancestee [Ancestor], and their children and their descendants, in equal parts."

"61-111. Descent where no father or mother. —The estate of an intestate, in default of a father and mother, shall go as follows: one-half to the brothers and sisters, and their descendants of the father; and the other one-half to the brothers and sisters, and their descendants, of the mother; provided, that if such line of either the father or the mother shall be extinct, then the entire estate shall go to such line of the other. This provision applies only where there are no kindred, either lineal or collateral, who stand in a near[er][1] relation, and does not apply to ancestral estates."

Mrs. Reynolds left no descendants. Her mother, father and all grandparents predeceased her. All her brothers and sisters died when very young, leaving no issue. She left no uncles or aunts surviving her. She was the daughter of Jessie Joyner and Nathan C. McCrary.

---

[1]See Daniels v. Johnson, 216 Ark. 374, 226 S.W. 2d 571.

Jessie Joyner, Mrs. Reynolds' mother, was the daughter of William and Martha Joyner, and the sister of Henry Joyner. Henry Joyner was the father of appellant. He also had five sons, none of whom were living at the time of Mrs. Reynolds' death, although two of the deceased sons each left a child surviving them.

Nathan Chalmer McCrary, the father of the decedent, was the son of Martha Ann Isabella Cook, who married Matthew P. McCrary. Matthew McCrary's sister, Fannie, married Nathan Judson Cook, the brother of Martha Ann Isabella. Martha and Nathan were the only children of Thomas Barnes Sims Cook who lived beyond childhood. Nathan Judson Cook and Fannie McCrary had one son, Thomas Brice Sims Cook, who was the father of appellees and the double first cousin of Mrs. Reynolds' father.

We will first dispose of a contention on the part of appellees that presents little problem. They contend that their relationship as double cousins to the decedent makes them related to her in the same degree as Mrs. Locke, contrary to the finding of the probate judge. Arkansas follows the canon or common law rule in determining degree of relationship. Meek, *Descent & Distribution*, Arkansas Bar Association Desk Manual, ¶ II(6), p. 13; *Kelly* v. *Neely*, 12 Ark. 657. William Joyner was the common ancestor of decedent and appellant. Thus, appellant was related to Mrs. Reynolds in the second degree. The common ancestor of Mrs. Reynolds and appellees was Thomas Barnes Sims Cook, which would make their relationship in the third degree. Appellees have cited no authority to support their argument and we know of none. On the other hand, appellant has cited *Franklin* v. *Hastings*, 253 Ill. 46, 97 N.E. 265. We think that the holding of the Illinois court is correct. Of course, the degree of relationship of appellees to the decedent would be determined by the nearest common ancestor.

We agree with the probate judge that § 61-111 provides the guideline for determination of the issues here as to real estate, but do not agree with his construction of the pertinent portions of that provision. It is to be noted that the general scheme of the Arkansas statutes of descent and distribution is establishment of certain "levels" of inheritance. As to new acquisition real property, they are, generally:

1. children or their descendants,

2. parents,

3. brothers and sisters and their descendants, and

4. uncles and aunts.

In arriving at these "levels" it is necessary to be aware that §61-111 defines the manner of descent of real estate where subsection 3 (third) of § 61-101 applies. *Todd* v. *Thedford*, 221 Ark. 436, 253 S.W. 2d 961.

The critical point in this case, however, is not the degree of relationship of the adverse claimants, but the construction and application of the meaning of the proviso in §61-111, *i.e.*, "that if such line of either the father or the mother shall be extinct, then the entire estate shall go to such line of the other." The trial judge held that the father's line was not extinct, apparently because of the survival of appellees. This is the point on which we disagree with the trial court. We hold that the line on the paternal side became extinct when there were no brothers and sisters (or their descendants) of Nathan Chalmer McCrary, the father of Nelle Reynolds. In so doing, we give consideration to the use of the word "such" to describe the lines mentioned in the proviso. It seems to us that it can only refer to the extinction of the specified collateral kin, *i.e.*, brothers and sisters and their descendants, rather than to complete extinction of the bloodline. If the latter meaning were

intended, the word "such" could be eliminated in favor of the word "the" in both places it precedes the word "line." The word "such" would be surplusage only. A statute should be construed so that no word is void, superfluous or insignificant and meaning and effect must be given to every word contained therein, if possible. *Wilson* v. *Biscoe,* 11 Ark. 44; *State* v. *Embrey,* 135 Ark. 262, 204 S.W. 1139; *Watson* v. *Harper,* 188 Ark. 996, 68 S.W. 2d 1019; *Wiseman* v. *Affolter,* 192 Ark. 509, 92 S.W. 2d 388; *Holt* v. *Howard,* 206 Ark. 337, 175 S.W. 2d 384; *Monsanto Chemical Co.* v. *Commissioner of Labbor,* 229 Ark. 362, 314 S.W. 2d 493. Our construction is not out of harmony with the legislative intent of the act. It seems to be in harmony with the excellent treatise by Mr. Harry Meek cited above. See, Problems in Land Descents, first problem, p. 6, *Descent & Distribution,* Arkansas Bar Association Desk Manual, ¶ (28), p. 34.

The descent of real estate in this case is not governed by the decision in *Dean* v. *Stuckey,* 234 Ark. 1103, 356 S.W. 2d 622, relied upon by appellee, because there were brothers or sisters (or both) of both the mother and father of the decedent in that case.

While all parties have treated the case as if only realty were involved, the greater part of the estate actually consists of personalty. Section 61-111 has no application to the devolution of personalty. It is governed exclusively by § 61-101. *Kelly's Heirs* v. *Mc-Guire,* 15 Ark. 555, 585. The effect of § 61-101 is declared in the following language in the cited case:

"The effect of the 1st section is, to constitute the persons, who take the personal property, whether per capita, or per stirpes, and whether of the whole or half blood, the absolute owners. Nor is it material, whether those persons are of the paternal or maternal, or the lineal or collateral line."

It was also held in that case that the rules of per

capita and per stirpes apply to personalty as well as to realty, to wit:

> "As, by its express language, it relates to both real and personal property, it was manifestly the design of the Legislature, when there were descendants of the intestate, to send down both to them *per capita,* if in equal degree, and *per stirpes,* if in unequal degree, without any regard to the fact as to how the property had been acquired. And as to personal property, where there are no descendants of the intestate to distribute it to, collaterals will take in the same way as descendants, if there had been any: that is to say, without any inquiry as to how it was acquired, and, *per capita,* if in equal degree, and *per stirpes,* if in unequal degree. This was manifestly the design of the Legislature."

These holdings were followed and applied in *Byrd* v. *Lipscomb,* 20 Ark. 19. See, also, Meek, *Descent & Distribution,* Arkansas Bar Association Desk Manual, p. 38, et seq.

The third section of § 61-101 provides for distribution of personal property, in the absence of children (or their descendants), parents, brothers or sisters (or their descendants), to the grandparents, uncles and aunts and their descendants, in equal parts, "and so on in other cases without end, passing to the *nearest* lineal ancestee [ancestor], and their children and their descendants, in equal parts." [Emphasis ours.] The nearest lineal ancestor of Nelle Reynolds, under this statute, was William Joyner. The Joyner heirs are his descendants. We conclude that the purpose of the word "nearest" in the statute was to maintain the "levels" of inheritance and to exclude very remote relatives on one side in favor of those of a closer degree on the other. This would mean, as suggested by Mr. Meek in his addendum to *Descent & Distribution, supra,* p. 11, that the search for distributees will not go "uphill" if there are descend-

ants of grandparents surviving. The McCrary heirs are descendants of great-grandparents, one step "uphill" from William Joyner on Nelle Reynolds' maternal side. Thus, the personalty should be distributed to the Joyner heirs per stirpes.

Reversed and remanded for further proceedings consistent with this opinion.