Mr. Bill A. Shirron, Executive Director Teacher Retirement System #3 Capitol Mall Little Rock, Arkansas 72201
Dear Mr. Shirron:
This is in response to your request for an opinion on four questions concerning newly adopted Act 497 of 1991. You note that this act opens up a six month window period for active members of the Arkansas Public Employees' Retirement System ("APERS") to purchase prior service in the Teacher Retirement System which has never been reported to the Teacher Retirement System, but which would otherwise have constituted qualified service. Your four questions refer to the nature of the payment which is necessary to purchase this credited service.
The act provides in pertinent part as follows:
 On or after July 1, 1991, until December 31, 1991, an active member of Arkansas Public Employees' Retirement System may contract with the board of the Teacher Retirement System to receive credited service for periods to which the employee would have otherwise qualified for service rendered prior to July 1, 1984, during the employ of a preceding state employer upon his paying to the reciprocal system[1] as defined in A.C.A. § 24-2-401 the prescribed contribution plus interest from the date of the previous service to the date of repayment.
 For the purpose of this act, `prescribed contribution' means the contribution in effect to purchase credited service with the reciprocal system at the time period of service rendered with the preceding employer prior to July 1, 1984. [Emphasis added.]
You note as background information that Act 493 of 1979, which is codified at A.C.A. § 24-2-402, defined the process for payment of prior credited service in a "reciprocal" system. That section provides:
 In addition to the forfeited credited service, the active member of a reciprocal system shall receive credit for his previous employment with a public employer upon his paying the prescribed employee and employer contributions based upon the rate in effect during the previous employment, together with regular interest from the dates for the previous service to the date of repayment. [Emphasis added.]
A.C.A. § 24-2-402(2)(B).
The enactment of this provision was apparently the first time a purchase of credited service in a "reciprocal" system was authorized by law.[2] Other provisions had authorized only a regaining of "forfeited" credited service.[3]
Your first question, bearing these facts in mind, is as follows:
 Because the law governing payment under reciprocity of back contributions has been in effect since March 21, 1979 [the effective date of A.C.A. § 24-2-402
(2)(B)] does the definition in Act 497 of 1991 of `prescribed contribution' refer to the method which has been used since that date, i.e., payment of both employee and employer contributions, plus interest, as prescribed in Sec. 24-2-402 (2)(B)?
It is my opinion, although the terms used in Act 497 of 1991 are ambiguous, that the answer to your first question is "yes."
Your question arises from the language used in the newly adopted Act 497 of 1991. That language defines the "prescribed contribution" to purchase credited service as "the contribution in effect to purchase credited service . . . at the time period of service rendered with the preceding employer." Thus, the act requires the employee to pay the contribution that would have been required to purchase credited service at the time period when the employee worked for that employer. It does not, however, state whether this contribution is to include both the employee and employer contributions plus interest, or some other contribution.
The exact nature of this "prescribed contribution" is ambiguous under the act. To determine what the prescribed contribution is, one must look to the provisions in effect at the time of the prior employment. But which provisions? On one hand, the act only applies to purchases of credited service in the Teacher Retirement System by current APERS members. The act refers, more than once, however, to "reciprocal systems" and "preceding state employers," terms which appear to apply to systems and employers other than the Teacher Retirement System. The inclusion of these terms appears to tie the provisions of the act to the provisions of A.C.A. § 24-2-402, which allows purchases of credited service in "reciprocal" systems upon payment of both the employee and employer contributions plus interest.
On the other hand, the act only applies to employment occurring prior to July 1, 1984. This date is significant because it is the date upon which a member of the Teacher Retirement System was required to pay both the employee and employer contributions to purchase credited service for prior employment as a teacher.See former Ark. Stat. Ann. § 80-1441.3 6.01(a)(ii). Prior to July 1, 1984, such members were only required to pay the employee contributions plus interest. See generally, A.C.A. § 24-7-502
(a)(5). These are not "reciprocal" purchases, however; they are purchases of credited service in the system of which the purchaser is now a member.
Your first question boils down to an interpretation of Section 1(b) of the new act. When it identifies the "prescribed contribution" as the contribution in effect to purchase credited service with the reciprocal system at the time period of service rendered with the preceding employer prior to July 1, 1984, the act raises the question: The contribution required by who? Does this mean the contribution required for a member of the Teacher Retirement System to purchase credited service in the Teachers' System, or does it mean the contribution required to make areciprocal purchase from one system to another? If the former, only the employee contribution plus interest must be paid. If the latter, both the employee and employer contributions plus interest must be paid.
It is clear, in my opinion, at least with respect to previous employment that occurred between March 21, 1979 and July 1, 1984, that A.C.A. § 24-2-402(2)(B), which requires payment of both employer and employee contributions plus interest, sets forth the "prescribed contribution."[4] After the effective date of this statute (March 21, 1979), this is the provision under which a current member of APERS would have purchased credited service in the Teacher Retirement System.[5] It requires payment of both employee and employer contributions plus interest.
It is also my opinion that this is the only provision that can govern previous employment which occurred prior to March 21, 1979, because no other general provision of law authorizes the purchase of credited service in a "reciprocal" system. Act 497 of 1991 continually uses this term. Statutes will be construed so that no word is void, superfluous, or meaningless, and every word in a statute must be given effect, if possible. Locke v. Cook,245 Ark. 787, 434 S.W.2d 598 (1968), and Cupp. v. Fraizer'sHeirs, 239 Ark. 77, 387 S.W.2d 328 (1965). The purchase contemplated in Act 497 is a "reciprocal purchase," i.e. from one system to another. Because the act uses the word "reciprocal" in the definition of "prescribed contribution", is does not appear that it was intended to refer to the contribution necessary for a Teacher Retirement member to purchase credited service in the Teacher Retirement System. This construction gives more weight to the actual terminology used in the act, rather than to the veiled reference to the July 1, 1984 date. If the legislature had intended to require the contribution for a non-reciprocal purchase prior to this date, it certainly could have done so plainly.
There is also another reason for construing the statute in this manner. If construed so as to allow certain members to purchase credited service in this window period and only pay the employee contributions plus interest, the act will, in my opinion, generate constitutional problems. If it is possible to construe an act so that it will pass the test of constitutionality, the courts not only may, but should and will, do so. Love v. Hill,297 Ark. 96, 759 S.W.2d 550 (1988), and Hamilton v. JeffreyStone Co., 25 Ark. App. 66, 752 S.W.2d 288 (1988). The new act only allows a "reciprocal" purchase by an active APERS member for prior employment which would have been covered by Teacher Retirement. Other reciprocal purchases are not authorized by the new act. If the act is construed so as to require payment of only the employee contribution plus interest, this particular type of reciprocal purchase is given preferatory treatment over other types of reciprocal purchases. We can conceive of no "rational basis" which would justify this distinction. Avoiding this potential unconstitutionality is another reason for construing the act to require payment of both employee and employer contributions plus interest.
Because the answer to your first question is "yes," it is unnecessary to address your remaining three questions, which are premised upon a negative answer to the first.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] A "reciprocal system" is defined at A.C.A. § 24-2-401 (1) (Supp. 1989) as "the Teacher Retirement System of Arkansas in operation June 30, 1957 . . . the Arkansas State Highway Employees' Retirement System, established by § 24-5-103; the Arkansas Public Employees' Retirement System, established by §24-4-103; or the Arkansas State Police Retirement System, established by § 24-6-203."
[2] There were, however, some exceptions for specific circumstances. See, e.g., A.C.A. § 24-4-502.
[3] In the former situation, (a purchase of credited service), the employee was never a member of the other system at the time employed there. In the latter situation, (a regaining of forfeited service), the employee was a member of another system, but his service under that system was forfeited because he left employment before any retirement benefits vested. The distinction becomes important for our purposes because in the former situation, no employer contributions would have ever been made on behalf of that employee, and in the latter, these payments would have been made.
[4] This term may also refer, however, to the actual dollar amount or rate of contribution which was in effect at the time of the previous employment.
[5] An argument can be made that the first paragraph of this statute modifies subsection (2)(B) thereof, so as not to allow a purchase of credited service by one not a member at the time of previous employment. It is my opinion, however, that subsection (2)(B) is clear in allowing this action. This subsection was added by Act 493 of 1979, and the first paragraph of the statute was adopted by virtue of Act 611 of 1975.