The Honorable Brent Davis Prosecuting Attorney Second Judicial District Post Office Box 491 Jonesboro, AR 72403
Dear Mr. Davis:
I am writing in response to your request for my opinion concerning Act 1151 of 2005, which adds an additional chapter to Arkansas Code, Title 23, to enact the "Local Option Horse Racing and Greyhound Racing Electronic Games of Skill Act". You have asked the following questions in this regard:
 1. Does the Emergency Clause set forth in Section 2 of the Act set forth facts, which establish a current emergency so as to make such clause valid? [Emphasis original.]
 2. Is it a violation of the Arkansas Constitution and/or an impermissible delegation of legislative authority, to grant the power to choose within which political subdivision, i.e., city, town, or county the election is to be held, to the sole discretion of the `Franchise Holder,' as set forth in Subchapter 2 of the Act, codified as A.C.A. § 23-113-201(a)(2)(A)(i), (ii) AND (iii)?[1]
RESPONSE
According to my review of the legislative proceedings surrounding passage of Act 1151 of 2005, the Emergency Clause failed to pass. See S.B. 999 of 2005, 85th General Assembly, Bill Status at http://www.arkleg.state.ar.us/(visited on June 13, 2005). A response to your first question is therefore unnecessary.
It is my opinion that the answer to your second question is "no." When the franchise holder's so-called "power to choose" under A.C.A. §23-113-201 is placed in context and the legislation is considered as a whole, the presumption of constitutionality prevails, in my opinion.
A brief review of this legislation will be helpful in framing the issue you have raised. As indicated above, A.C.A. § 23-113-201 (Acts 2005, No. 1151, § 1) is part of the newly enacted "Local Option Horse Racing and Greyhound Racing Electronic Games of Skill Act" (hereinafter "the Act"),[2] which authorizes a "franchise holder" to conduct wagering on "electronic games of skill" on the grounds of the racetrack park site after obtaining the approval of local voters,[3] subject to findings by the Arkansas Racing Commission ("Commission"). Id. at subsections (a) (local option election requirement) and (e) (Commission findings). The "legislative findings" section, A.C.A. § 23-113-101, recites as reasons for the law the "economic and agribusiness benefits" derived from Arkansas racing activities, the adverse economic effect of other states' wagering activities, and the prospective benefits from the additional wagering if approved by local voters. Id. at (a) and (b). After a lengthy recitation of these matters, the section concludes:
 For the reasons stated in subsections (a) and (b) of this section and other reasons the General Assembly finds that cities or counties where horse racing or greyhound racing parks are located in Arkansas should have the opportunity to address these issues and promote economic development, tourism, and agribusiness by allowing the voters in these cities or counties to have the opportunity by local election to authorize horse racing or greyhound racing parks in their communities to offer wagering on additional forms of electronic games of skill.
Id. at subsection (c).
The General Assembly thus decided to allow voters of the "cities or counties" a voice on the question. See also A.C.A. §23-113-201(a)(2)(A)(i) (providing that "the franchise holder may not conduct wagering on electronic games of skill under this chapter unless the question . . . shall have been submitted to the electors of the city, town, or county in which the franchise holder's racetrack park site is located. . . .") I assume you are not questioning the general constitutionality of this process, as our court has held on prior occasions that the General Assembly can enact a law and provide for operation under it to depend upon a contingency or condition, such as a favorable vote of the electors in a particular locale, without transgressing the so-called "unlawful delegation" doctrine.[4] Seee.g., Boyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237 (1998) (act authorizing an additional one cent sales tax in Texarkana (in lieu of state income tax) only upon approval of the local electorate not an unlawful delegation of legislative authority); Swanberg v. Tart, 300 Ark. 304,778 S.W.2d 931 (1989) (law authorizing horse racing on Sunday subject to vote of the local electorate not an unconstitutional delegation). See alsoSummers' v. Road Improvement Dist. No. 16, 160 Ark. 371, 254 S.W. 696
(1923); Capps v. Judsonia Steprock Road Improvement Dist.,154 Ark. 46, 242 S.W. 72 (1922).
Your question appears to be focused instead on the matter of which political subdivision holds the election. The following subsection of A.C.A. § 23-113-201(a)(2) is the apparent basis for your concern:
 (A)(ii) If the racetrack park is located within the corporate limits of a city or town, the question shall be submitted to the electors of either the city, town, or county in which the racetrack park is located, as requested by the franchise holder, and if the racetrack park is not located within the corporate limits of a city or town, then the question shall be submitted to the electors of the county in which the racetrack park is located. [Emphasis.]
Subsection (a)(2)(B)(i) provides further:
 The governing body of the city, town, or county, as the case may be, shall by ordinance submit the question to the electors if requested by the franchise holder.
I believe it is reasonably clear from these provisions that the franchise holder determines where the election is held by making the "request" to the city or county. See also A.C.A. § 23-113-201(a)(2)(B)(iv) (requiring the franchise holder to pay "[t]he cost incurred by the city, town, or county involved in conducting each special election pursuant to thefranchise holder's request . . .) (emphasis added). Apparently, the "request" is more in the nature of a command. When considered in isolation, this grant of authority admittedly seems inconsistent with the principle that the General Assembly cannot lawfully delegate the power to make a law. Identifying the local electorate would seem to be a matter for the legislature, given that authority to conduct the additional wagering is contingent upon this vote.
When these provisions are placed in context, however, and consideration is given to the Act as a whole, consistent with established rules of statutory interpretation, a statutory scheme emerges that in my opinion likely meets the test of constitutionality. Determining and giving effect to the intent of the legislature is of course the cardinal rule of statutory construction. Hice v. State, 268 Ark. 57, 593 S.W.2d 169
(1980). Each section is read in light of every other section, and the object and purposes of the legislation are to be considered. Chism v.Phelps, 228 Ark. 936, 311 S.W.2d 297 (1958). The statute should also be construed so that no word is left void, superfluous, or insignificant.Locke v. Cook, 245 Ark. 787, 434 S.W.2d 598 (1968). Finally, and perhaps most important, the statute is presumed constitutional. See Hall v.Tucker, 336 Ark. 112, 983 S.W.2d 432 (1999) (citations omitted). If it is possible to construe it as constitutional, a court will do so, resolving all doubts as to validity in its favor. See Jones v. State,333 Ark. 208, 969 S.W.2d 618 (1998) and Wiseman v. Phillips, 191 Ark. 63,84 S.W.2d 91 (1935).
Applying these principles, I find that it is possible to construe the franchise holder's choice of election forums as constitutional. As an initial matter, I find particular relevance in the requirement that the franchise holder must provide the city or county with evidence of anticipated economic benefits when making a request for an election. Subsection (a)(2)(B)(ii) of § 23-113-201 states:
 If the franchise holder makes a request for an election, the franchise holder shall present to the governing body evidence of anticipated benefits to economic development, job creation, tourism, and agribusiness which may result, directly or indirectly, from the authorization of wagering on electronic games of skill at the franchise holder's racetrack park site under this chapter if approved by the local voters at the election.
This echoes the legislative findings under § 23-113-101, noted above. But what is the purpose of this requirement? If the power to choose the local electorate has indeed been granted to the sole discretion of the franchise holder, as you have suggested, this requirement is seemingly meaningless. Yet it cannot be viewed as superfluous, according to established rules of interpretation. See generally Cook, supra.
A possible explanation of this requirement begins to emerge when it is viewed together with other sections of the Act, bearing in mind the Act's purpose of giving the city or county voters an opportunity, through this election, to address the economic concerns that the legislature has identified. See A.C.A. § 23-113-101, supra. The legislative findings section clearly reflects this intent. But the General Assembly has left to the franchise holder the task of identifying which local community, (the city, town, or county), holds the vote. This is to be decided, moreover, based upon the "evidence of anticipated benefits" that the franchise holder has gathered as required by § 23-113-201(a)(2)(B)(ii),supra. Such a delegation of authority evokes the well-settled rule that "the General Assembly may make a law to delegate the power to determine some facts or state of things, upon which the law makes or intends to make its own action depend." Capps v. Judsonia Steprock RoadImprovement Dist., 154 Ark. 46, 242 S.W. 72 (1922). See also Leathers v.Gulf Rice Arkansas, Inc., 338 Ark. 425, 4311, 994 S.W.2d 481 (1999),Swanberg, supra, and cases cited therein. The franchise holder has been delegated the power to gather information concerning local economic conditions, including anticipated benefits to agribusiness, tourism, and economic development, that will then determine whether the vote is held in the city (or town) or county. The franchise holder makes the request for the election based on this evidence. The discretionary aspect of the "request" is arguably minimized when the request is viewed in this light.
Further minimizing the element of discretion, in my opinion, is the fact that a vote approving wagering on the additional electronic games does not automatically ensure that the franchise holder will be authorized to conduct such wagering. This is apparent from the further procedural requirements that follow a favorable vote. In addition to obtaining a finding from the Commission that the particular game and rules of play are authorized by the Act, the franchise holder must submit evidence of and obtain a Commission finding regarding the anticipated economic benefits from the additional wagering. Subsection (e) of § 23-113-201
provides in relevant part:
 (e)(1) Prior to conducting wagering on an electronic game of skill, the franchise holder shall present to the commission a complete description of the game and the electronic device or machine to be utilized in the play of the game, the proposed rules of play, and such further information as the commission determines is necessary or appropriate in order to effectively carry out its regulatory functions in accordance with this chapter. The franchise holder shall also present evidence to the commission of anticipated economic benefits to the horse racing or greyhound racing industries in Arkansas, including Arkansas horse or greyhound farms and breeding operations and related agribusinesses, which may result, directly or indirectly, from the authorization of wagering on the electronic game of skill. [Emphasis added.]
 (2)(A) Within sixty (60) calendar days after the submission of the information required by subdivision (e)(1) of this section, the commission shall make a finding as to whether:
 (i) The game and electronic device or machine constitutes an electronic game of skill authorized by this chapter; and
 (ii) Economic benefits to the horse racing or greyhound racing industries in Arkansas, including Arkansas horse or greyhound farms and breeding operations and related agribusinesses, may result, directly or indirectly, from the authorization of wagering on the electronic game of skill.
A.C.A. § 23-113-201(e)(1) and (2)(A) (emphasis added).
Only after this finding may the franchise holder commence conducting wagering on the game. Id. at (e)(3). This suggests that the Commission may, in effect, "undo" the local vote, depending upon its finding with respect to the resultant economic benefits.
Additionally, although the "economic benefits" evidentiary requirement under this subsection is not explicitly related to that preceding the franchise holder's election request to the city, town, or county "governing body" (A.C.A. § 23-113-201(a)(2)(B)(ii), supra), I believe it is reasonable to interpret them as related. Specifically, I believe the Commission's "finding" pursuant to subsection (e) could conceivably include a determination that based on the economic benefits evidence, the vote should have been held in the county rather than the city, or vice versa as the case may be. This further reveals that the franchise holder's election choice is a step in a process that ultimately depends upon a determination that is to be made by the Commission.
When these factors are considered, I believe it is reasonable to conclude that the franchise holder has not been delegated the power to make the law. Rather, the terms and content of the law were fixed by the legislature. Borrowing from the court's statement of the distinction between a lawful and unlawful delegation, the Act confers upon the franchise holder certain "authority or discretion as to its execution to be exercised under and in pursuance of the law." Terrell v. Loomis,218 Ark. 296, 299-300, 235 S.W.2d 961 (1951), quoting State v. Davis,178 Ark. 153, 10 S.W.2d 513 (1928).
It is therefore my opinion that 23-113-201 is constitutional.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: EAW/cyh
[1] The section you have cited does not contain a subsection (iii). I assume that the intended citation is A.C.A. § 23-113-201(a)(2)(A)(i) and (ii) and (B)(iii).
[2] The Act is effective August 12, 2005, the effective date of legislation passed during the 2005 regular legislative session without an emergency clause or specified effective date. See Op. Att'y Gen.2005-110.
[3] The "franchise holder" is the person who holds a franchise to conduct horse racing or greyhound racing under Arkansas law. A.C.A. §23-113-103(6) (Acts 2005, No. 1151, 1). "Electronic games of skill" are defined as "games played through any electronic device or machine that affords an opportunity for the exercise of skill or judgment where the outcome is not completely controlled by chance alone." Id. at (5)(A).
[4] The source of this constitutional doctrine has been variously identified as Ark. Const., art. 5, § 1 (the "legislative power of this State shall be vested in a General Assembly . . ."), Ark. Const. amend. 7
("[t]he legislative power of the people of this State shall be vested in a General Assembly . . . but the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution . . ."), and Ark. Const. art. 4, §§ 1 and 2 (the "separation of powers" doctrine, ascribing distinct functions to the executive, legislative and judicial branches). See, e.g., Sparling v. Refunding Board,189 Ark. 189, 71 S.W.2d 182 (1934); Wenderoth v. City of Ft. Smith,251 Ark. 342, 472 S.W.2d 74 (1971);Curry v. State, 279 Ark. 153, 649 S.W.2d 833
(1983).