CAPPS *v.* JUDSONIA & STEPROCK ROAD IMPROVEMENT DISTRICT.

Opinion delivered June 5, 1922.

1. STATUTES—AUTHORITY TO CALL ELECTION.—Act No. 8 of Extraordinary Session of 1920, § 36, providing that the act should not become effective until approved by votes of the landowners of the proposed highway improvement district at an election to be held at a time and place to be fixed by the county court, requires that court to call such election, and vests in the court the discretion to fix the time and place for holding it.

2. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.—A statute creating a road improvement district which provides that the act shall not become effective until approved by a vote of the landowners at an election to be held at a time and place fixed by the county court, is not invalid as a delegation of legislative power to the county court.

3. STATUTES—REFERENDUM.—Crawford & Moses' Dig., §§ 7510, 7512, relating to referendum of municipal ordinances under Amendment 7 of the Constitution, do not apply to an act of the Legislature creating a proposed highway improvement district and providing that it shall become effective only upon approval by vote of the landowners of the proposed district.

4. STATUTES—REFERENDUM.—Under Const. Amendt. 7, and Crawford & Moses' Dig., § 9767, authorizing the General Assembly to order a referendum on any measure enacted, at such time and in such manner as the General Assembly may direct, the General Assembly may refer to the landowners of a proposed road improvement district the question whether or not the act should take effect; such election to be held at a time and place to be fixed by the county court.

5. STATUTES—NOTICE OF REFERENDUM.—An order of the county court calling an election of the landowners of a proposed road improvement district to determine whether the act creating the district should be adopted, to be held at the usual voting places in a township in the proposed district, notice of which was published in the only weekly newspaper published in the district, was sufficient, in connection with testimony in the record showing that

mass meetings were held in the district prior to the election, at which the question was discussed, to show that the landowners were given a fair opportunity to express their will on the issue.

6. HIGHWAYS—ROADS CONNECTED BY HIGHWAY.—Act 1920 (Ex. Session), No. 8, creating a road improvement district for the improvement of two designated roads, was valid where the roads were connected by an improved road.

7. HIGHWAYS—ENTRY OF ASSESSMENTS IN BOOK.—Act 1920, No. 8, §§ 7 and 8, providing that the highway commissioners shall enter the assessment of benefits of the proposed district in a book to be filed with the county clerk, and that the secretary of the board shall publish notice of the filing, are mandatory and jurisdictional, and assessments are invalid where, at the time the notice was published, they had not all been extended on the book.

Appeal from White Chancery Court; *John E. Martineau*, Chancellor; reversed in part.

*J. N. Rachels*, for appellants.

1. The act is inoperative, and section 36 thereof only renders it more so. An election to be held at a time and place to be fixed by the county court of White County confers no authority on anyone to call an election, the time and place for holding which *may* be fixed by the county court. If the county court should have refused to act on the subject, could it have been compelled to act? This court has said it could not. 47 Ark. 80-85; 104 *Id.* 583. An act must be clear and definite before it can be enforced. 122 Ark. 491-498. All elections on measures referred to the people must be had at the biennial general election, except when the Legislature orders a special election. 105 Ark. 380. See Amendment 7, Constitution. The county court could not act *sua sponte.* 17 Standard Procedure, 674 § 2 and cases cited; *Id.* 678 and cases cited. It could call the election, if it could do so at all, only under C. & M. Digest, §§ 7510 and 7512. There is nothing in the act indicating that the General Assembly ordered an election, and this court cannot supply that intention. 143 Ark. 83-87. See also 67 Ark. 30; 131 *Id.* 429; 104 *Id.* 298.

2. Two or more roads cannot be constructed under a single act which only provides for a single system with a

single board of commissioners. 141 Ark. 288; *Road Improvement Districts 1, 2 and 3* v. *Crary,* 151 Ark. 484; 118 Ark. 294-302.

3. The assessment was arbitrary, capricious and confiscatory, was not made as provided by the act, and was not made and filed with the county clerk before the notice provided for by section 9 of the act was published. Cooley on Taxation, 3rd ed. 1252 and cases cited; *Id.* 1254 and cases cited; *Id.* 1257-1258; 88 Wis. 599; 50 N. Y. 502; 9 Wash. 253; 9 Standard Encyc. of Proc. 1158; 160 Pa. 499; 51 N. J. L. 267; 63 N. J. L. 202; 54 Cal. 536; 13 Ark. 198; 15 *Id.* 43-49; 15 Am. and Eng. Enc. of L., 2nd ed. 356; 50 Ark. 116-129; 89 *Id.* 513-517. The list, called assessment list, was fatally defective under the requirements of section 7 of the act. These requirements are mandatory. 79 Ark. 236; 99 *Id.* 508.

4. The notice of the election was insufficient, not only in the method and length of time of publication, but also in failure to designate the bounds of the district, thereby effectuating a fraud upon the landowners. 116 Ark. 167.

*John E. Miller* and *C. E. Yingling,* for appellees.

1. The act is definite and certain, and the election held thereunder was valid. The Legislature could not well have been more explicit in the language employed in section 36 of the act, without itself fixing the time, place and manner of holding the election, and it had the power to delegate that duty to the county court.

This is a special act. The initiative and referendum amendment applies to laws of a general nature and not to special acts. See C. & M. Digest, §§ 9764, 9766, 9767; 104 Ark. 583; 104 *Id.* 516.

Under the provisions of C. & M. Digest, § 9767, the Legislature itself could have refused this act to the people; also under its terms as also under the initiative and referendum, it had the power to refer the act in the manner it did.

2. On the question as to whether or not the election held was legally sufficient, see 43 Ark. 66; 92 Ark. 70; 25 R. C. L. 772, § 19.

3. The contemplated improvements constitute a single improvement. 139 Ark. 602-603; *Id.* 524; 142 *Id.* 58; 138 *Id.* 553; 137 *Id.* 354; 130 *Id.* 514.

4. The method of assessment of benefits is valid. 141 Ark. 164; 137 *Id.* 568; 139 *Id.* 322; 147 *Id.* 449.

WOOD, J. This is an action by the appellants, taxpayers and owners of real property, in what is known as the Judsonia-Steprock Road Improvement District (hereafter called district). The district was created by act No. 8 of the Acts of the General Assembly in extraordinary session, approved January 31, 1920. The action is against the district and its commissioners. The complaint and the amendments thereto with the exhibits are voluminous, and we shall not undertake to set them out in detail, but will only state the issues in a general way and dispose of them in the manner in which they are presented in the brief of counsel for appellants.

1. Appellants contend that the act creating the district is not a complete act; that it is too vague to be operative, as shown by the provisions of section 36 of the act, which is as follows:

"Sec. 36. This act shall not become effective until after the same shall have been approved by a vote of the landowners of the territory hereinbefore described and embraced in said district, at an election to be held at a time and place to be fixed by the county court of White County, at which election only landowners of said district shall be permitted to vote, and provided that if either a majority in value as shown by the last county assessment, or acreage of the landowners in said district, voting in said election, shall vote for this act, the same shall be declared adopted by the county court of White County and shall at once become effective; provided, further, that at said election there shall be elected by the landowners in said district and voting in said election three

landowners of the district as commissioners of said district by the county court of White County, which court shall also designate the term that each of said commissioners shall hold office, as hereinbefore provided, and the commissioners so appointed by said court shall hold office for the term designated and fixed by said court and until their successors are appointed, as herein provided; and provided further, that the returns of the election herein provided for shall be made to and canvassed by the county court of White County, which court shall make an order declaring the result of said election.''

Counsel for appellants argue that the county court, under the above section, had no authority to call an election. When section 36 is taken as a whole, and the language used by the Legislature to express its intention is given its plain and natural meaning, it unquestionably shows that it was the intention of the Legislature to direct the county court of White County to hold an election at which the landowners in the territory should voice their approval or disapproval of the act, and provided that if either a majority in value as shown by the last county assessment, or acreage, of the landowners voting at said election shall vote for the act, the same should be declared adopted and at once become effective. It is the duty of the court to construe the language of the section as a whole and give meaning and effect to every word, if possible. When this is done, we have no doubt that the legislative purpose was to require an election to be held, and likewise to require the county court to fix the time and place of such election. The language, ''at an election to be held at a time and place to be fixed by the county court,'' is as mandatory in its meaning and effect as if the Legislature had said ''at an election which *shall* be held,'' etc. The use of such language does not leave it optional or discretionary with the county court to call an election. This is mandatory; but the fixing of the time and place for such election is a matter within the court's discretion.

No power is delegated to the county court to make the law, that is, to determine what the law shall be, but upon the county court is conferred the power, and it is made its mandatory duty, to ascertain, by voice or vote of the landowners in the district, at an election to be called by the county court, whether the majority in value or acreage will that the act shall become effective. Providing for "an election to be held at a time and place to be fixed by the county court" is tantamount to commanding the county court to call an election and to fix the time and place of such election. These were ministerial functions imposed upon the court. Under the language employed, such functions were imposed by necessary implication, and this could be, and was, done as effectually as by the use of express terms    The court, *sua sponte,* could have exercised such function in the absence of any petition of interested landowners of the district, but in this case, as the record shows, there was a petition of ten landowners of the district which was made the basis of the court's call. Had the court failed to act upon the prayer of such petition, then undoubtedly these landowners would have had a remedy by mandamus to compel it to call an election and fix the time and place thereof.

The case is ruled on this point by the cases of *Boyd* v. *Bryant,* 35 Ark. 69-74; *Nall* v. *Kelly,* 120 Ark. 277-286; *Harrington* v. *White,* 131 Ark. 291-294. In the latter case, we said: "It is insisted, in the first place, that the statute is void because it is an attempt to delegate legislative authority. It seems plain to us, however, that the statute is not a delegation of legislative authority, but comes within the rule that the Legislature may 'make a law to delegate the power to determine some facts or state of things, upon which the law makes or intends to make its own action depend.' *Boyd* v. *Bryant*, 35 Ark. 69; *Nall* v. *Kelly,* 120 Ark. 277." We also quoted from the Supreme Court of Ohio in the case of *Cincinnati, etc., Rd. Co.* v. *Commissioners,* 1 Ohio St. 77, as follows:

"The. true distinction is between the delegation of power to make the law, which necessarily involves the discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made." After the above quotations, we conclude by saying: "Applying that test to the case in hand, it is plain that the statute does not amount to a delegation of the legislative power, but on the other hand the Legislature exercised its power by declaring what the law shall be when put into operation in a given locality by ascertainment of certain facts, *i. e.*, the will of the majority in the given locality to be affected."

2. Counsel for appellant next insist that if the county court had the power to call the election, it could only do so under the provisions of secs. 5110 and 5112 of Crawford & Moses' Digest. The above sections have reference to the referendum of municipal ordinances passed under the authority of Amendment No. 7 of the Constitution, providing for general legislation under what is known as the initiative and referendum, and the enabling acts. See also secs. 9764 to 9767 C. & M. Digest, inclusive. The above sections, therefore, have no application to the act under review. This is a special act. Amendment No. 7, among other things, provides as follows: "All measures referred to the people of the State shall be had at the biennial general elections, except when the legislative assembly shall order a special election." Sec. 9767, *supra*, provides: "The General Assembly may order the referendum upon any measure enacted thereby, and the same shall be voted upon and the result of the vote thereon declared in the same manner as measures upon which the referendum has been ordered by petition, or at such time and in such manner as the General Assembly may direct."

Unquestionably, under the above provisions of the Constitution and the enabling acts, the General Assem-

bly had the power to refer to the landowners of the district the question as to whether or not the act should take effect, such question to be determined at a special election to be held at a time and place fixed by the county court.

3. Since the provisions of the enabling acts pertaining to general legislation under the initiative and referendum, as to the time, place and manner of holding elections, have no application, the only question we need consider in regard to the election is whether or not the election called at a time and place designated by the county court and conducted in the manner directed by it, gave the landowners of the district a fair opportunity to express their will on the issue as to whether or not the act should take effect.

It could serve no useful purpose to set out, *in extenso,* the order of the county court calling the election. It shows that the election was to be held at the usual voting place in Harrison Township, White County, Arkansas, on the 13th day of March, 1920, and the notice of such election was dated February 18, 1920. This notice was published in the Judsonia Advance, a weekly newspaper having a *bona fide* circulation in Harrison Township of White County, one of the townships included in the improvement district, the same being the only township of the district in which a newspaper was published. There is testimony also in the record tending to prove that prior to the election there were mass meetings held in the district at which the issue as to whether or not the law should take effect was discussed.

Without discussing the matter further, it suffices to say that the manner in which the county court conducted the election was sufficient to give the landowners of the district a fair opportunity to voice their wishes on the issue. No act of fraud is alleged, or shown, in the conduct of the election on the part of those designated to hold the same, and it is not proved by the appellants that the result of the election as declared by the county

court was other than the free and intelligent choice of a majority in acreage and value of the landowners of the district voting at the election. We are convinced, therefore, that the act was duly adopted in compliance with sec. 36 of the act, and should become effective from and after the 20th of March, 1920, as declared by order of the county court, unless the act contains other provisions which render it invalid.

4. The appellants contend that there are two roads to be improved, and two separate and distinct improvements, which cannot be grouped together for the purpose of taxing the landowners in the district as for a single improvement. Counsel for appellants, in his brief, attaches a copy of the map which was on file with the county clerk of White County, showing that there are two roads to be improved. Sec. 27 of the act provides: "The commissioners of said district may, at any time hereafter, subject to the approval of the county court of White County, and in accordance with the provisions of this act, extend and improve the roads herein provided for or improve any of the roads in said district connecting the roads herein provided for, or either of them, with any other improved road in said district, or connecting either of said roads herein called for with the other; provided, however, that the improvement of any road or roads not herein provided for shall not cause the cost of construction of all the roads so improved in said district to exceed in cost forty per cent. of the value of the lands and real estate and real property in said district, as shown by the county assessment in effect at the time said additional road or roads are to be improved."

Section 8 of the act provides as follows: "If the commissioners conclude that lands not within the boundaries of the district, as hereinbefore laid out, will be benefited by the improvement of the roads, they shall assess the benefits and damages to such lands and return a separate assessment thereof."

The testimony of F. O. White, county judge of White County, was to the effect that the two roads shown on the map and described in the act as the roads to be improved by the creation of this district are connected by an improved road known as the State highway, and that this highway lies entirely within the boundaries of the district. It will be observed that section 27 conferred upon the commissioners the power, subject to the approval of the county court, to "improve any of the roads in the said district connecting the roads herein provided for, or either of them, with any other improved road in said district, or connecting either of said roads herein called for with the other." The trial court was therefore justified in finding as a fact that, under the uncontroverted evidence, the roads to be improved constituted but a single scheme or project for the improvement of these highways. But, aside from this, there is nothing in the record to demonstrate that the determination by the General Assembly that the improvement contemplated constituted but a single project was an arbitrary and unreasonable exercise of legislative power. Our conclusion that the act is not invalid because it creates a district for the improvement of two roads specifically designated, and other connecting roads mentioned, constituting but a single scheme of local improvement, is in accord with numerous decisions of this court. Therefore we need not pursue the question further. *Bennett* v. *Johnson,* 130 Ark. 507-514; *Tarvin* v. *Road Imp. Dist.* 137 Ark. 354-364; *Sallee* v. *Dalton,* 138 Ark. 549-553; *Booe* v. *Simms,* 139 Ark. 595-602-3; *Van Dyke* v. *Mack,* 139 Ark. 524; *Easley* v. *Patterson,* 142 Ark. 52-58; *Desha Road Imp. No. 2* v. *Stroud,* 153 Ark. 582, where the cases are collated.

5. The appellants challenge the validity of the assessment of benefits made by the commissioners on various grounds, only one of which it is necessary to discuss and decide. Section 7 of the act provides, among other things, as follows: "The commissioners shall pro-

ceed to assess the lands within the district and shall inscribe in a book each tract of land, and shall assess the value of the benefits to accrue to each tract by reason of such assessment, and shall enter such assessment of benefits opposite the description, together with the estimate of the probable cost to the landowners. * * * * * The commissioners shall also assess all damages that will accrue to any landowner by reason of the proposed improvement, including all injury to lands taken or damaged; and where they return no such damages as to any tract of land, it shall be deemed a finding by them that no damages will be sustained.'' Section 9 provides, in part, as follows: ''The assessment of benefits of said district shall be filed with the county clerk of White County, and the secretary of the board shall thereupon give notice of its filing by publication for two weeks in a newspaper published and having a *bona fide* circulation in that county. This notice may be in the following form: Judsonia and Steprock Road Improvement District. Notice is hereby given that the assessment of benefits and damages of the above district has been filed in the office of the county clerk of White County, where it is open to inspection,'' etc. (Then follows a provision for description of land beyond the district). The notice concludes by calling upon all persons wishing to be heard to appear on the day named.

One of the commissioners, the secretary of the board, testified that the board of commissioners authorized one Louis Bell to do the mechanical work of extending the benefits. Prior to that time the board had determined upon the method for arriving at the benefits, and gave instructions to Bell as to the method to be pursued. The board met on the 24th of November for the purpose of assessing the benefits. At that time Bell had not finished the work of extending the benefits on all the land, ''but had the work completed and was working on the books to put in on there. He had most of it on the books.'' The testimony of this witness further shows that the

record of the board "does not show the benefits assessed against each separate piece of property." The board, as assessors of the district, certified that the assessments as the same appeared on the commissioners' records were equitable and just, to the best of their knowledge and belief. This certificate was signed by them on the 24th of November, 1921. At this time, as his testimony above shows, Bell had not finished the work—that is, had not succeeded in actually extending the benefits on all of the lands.

Bell testified concerning this in part as follows: At that time and before the 24th of November, 1921, he had figured up the entire benefits. On that day the commissioners signed the certificate, but all of the assessed benefits were not actually written down in the book. The above testimony was uncontroverted, and it shows that sections 7 and 9 of the act had not been complied with as above set forth in regard to the assessment of benefits before the notice required by section 9 was published. A majority of the court have reached the conclusion that sections 7 and 9 require that the commissioners as assessors shall enter the value of benefits to accrue to each tract of land in a book opposite the description of each tract, and that this book, showing the benefits assessed against each tract, shall be filed with the county clerk of White County; that these provisions are mandatory, and were intended for the benefit of the property-owner, and were therefore jurisdictional requirements which had to be complied with before the secretary of the board was authorized to give the notice specified in the statute. The language of these sections shows that the Legislature contemplated that the assessment of benefits in the manner indicated was to be complied with as a condition precedent to the notice and the hearing provided for before the commissioners for the equalization and adjustment of the assessments of benefits. The notice was essential in order that the property owners might examine the book containing the assessment of

benefits to determine whether or not they were objectionable and whether or not they desired to be heard upon the assessments, and, if so, to prepare for such hearing. It was not enough that the property owners should have the right simply to appear before the commissioners on the day specified in the notice. The statute was framed so as to give the property owner the right to examine and compare his own assessment with every other assessment in the district, in order to determine whether the assessment as a whole, or his own assessment of benefits as compared with the others, was fair and just, or whether it was unequal, inequitable, and discriminatory.

It follows that the assessment of benefits made by the board of commissioners as assessors of the district was null and void. The court erred in not so holding and in dismissing that portion of the appellant's complaint which called in question the validity of such assessment. On account of this error the decree is therefore reversed, and the cause remanded for further proceedings according to law and not inconsistent with this opinion.

McCulloch, C. J., (dissenting). I do not think that the requirement of the statute that the completed assessment list should be filed with the county clerk before the publication of notice is jurisdictional, and avoids the assessment if not complied with. The purpose of the requirement is to give the owners of property an opportunity to be heard as to the correctness of the assessments— to provide a time and place for such hearing and notice thereof in advance. The specification of time of two weeks is not for the purpose of giving that much time to prepare for a contest, but it is to insure publicity, so that every interested owner can be advised of the hearing. The failure to file the completed list was a mere irregularity, and should be disregarded unless prejudice actually resulted. In this instance the list was incomplete when filed on the day the notice was given, but it was completed before the day set for the hearing, and every landowner had an opportunity on that day to

contest the correctness of the assessment. In fact, the landowners who are parties to this suit appeared, and their complaints against the assessment were heard, therefore the failure to complete the list of assessments before it was filed had no prejudicial effect whatever.

Of course, if the owners of property had been deprived of the opportunity to be heard on account of the failure to complete the assessment list before the day of hearing—in other words, if they were deprived of the fullest opportunity to be heard in complaint against the assessments—then a court of equity should grant relief, even treating the failure to file the list in time as a mere irregularity; but where no harm resulted, the assessments should not be avoided on account of the irregularity.

The commissioners do not sit as a court, though, in passing on complaints against assessments, they act in a *quasi*-judicial capacity; and strict compliance with the requirements of the statute should not be exacted as to matters affecting the jurisdiction of the board. Substantial compliance with the statute is all that should be required.