The Honorable Gunner DeLay State Senator 4200 Free Ferry Lane Fort Smith, Arkansas 72903-2388
Dear Senator DeLay:
This is in response to your request for an opinion on the following two questions:
 1. Can the legislature refer a sales tax increase to the voters for approval?
 2. If a sales tax increase can be referred to the voters, can it be done in a special election?
RESPONSE
To the extent you describe a state-wide increase in the gross receipts tax, it is my opinion that the answer to your first question is "no." An answer to your second question is therefore unnecessary.
Question 1 — Can the legislature refer a sales tax increase to the votersfor approval?
It is axiomatic that the legislature possesses all legislative power unless restrained by some provision of the Arkansas or United States Constitutions. See e.g., Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100
(1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974) and Black v.Cockrill, Judge, 239 Ark. 367, 389 S.W.2d 881 (1965). In addition, legislation is presumed to be constitutional absent a clear conflict with constitutional provisions. See e.g., Teague v. State, 328 Ark. 724,946 S.W.2d 670 (1997); Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207 (1984);Stone v. State, 254 Ark. 1011, 498 S.W.2d 634 (1973); and Buzbee v.Hutton, 186 Ark. 134, 52 S.W.2d 647 (1932). Legislation passed to refer a sales tax increase to the voters of the entire state would therefore be presumed constitutional and would be upheld unless contrary to a constitutional provision.
In my opinion, such legislation would be contrary to at least one Arkansas constitutional provision and perhaps other constitutional doctrines as well. The most relevant prohibition, in my opinion, is found in a paragraph in Amendment 7 to the Arkansas Constitution (the "Initiative and Referendum Amendment"), as follows:
 This section shall not be construed to deprive any member of the General Assembly of the right to introduce any measure, but no measure shall be submitted to the people by the General Assembly, except a proposed constitutional amendment or amendments as provided for in this Constitution.[1]
Arkansas Constitution, Amendment 7 ("General Provisions" "Majority") (emphasis added).
The plain language of this provision appears to stand as a clear prohibition against the action you suggest. It is necessary, however, in order to fully address your first question, to review some interpretive case law of the Arkansas Supreme Court on this point, and to search the remainder of the Arkansas Constitution for any provision which might authorize such a referral despite the prohibitory language of Amendment 7.
I have found only three cases of the Arkansas Supreme Court addressing this Amendment 7 provision. Two cases involved the General Assembly's submission of acts to the voters of a particular locality and the third concerned the referral of a provision of a general act to the voters of the entire state. I will discuss these cases in the order of their rendition by the Arkansas Supreme Court.
The first case is Simpson v. Teftler, 176 Ark. 1093, 5 S.W.2d 350
(1928). In Simpson, at issue was a special act passed by the General Assembly to provide for a "stock law" in Monroe County. (At the time of the passage of the act, such special laws were not yet prohibited by Amendment 14.) The act also contained a provision, however, requiring an election on a certain date in Monroe County, at which the electors therein would cast their votes either "for" the "stock law" or "against" the "stock law." The question arose as to whether this provision for an election violated the provision of Amendment 7 discussed above. The appellee attempted to rely on an earlier case, LeMaire v. Henderson,174 Ark. 936, 298 S.W. 327 (1927), where no "unlawful delegation" of legislative authority was found in an act to provide for consolidated school districts in certain areas of the state. The court in Simpson v.Teftler distinguished Le Maire, however, and unlike in the Le Maire
case, found the Monroe County stock law unconstitutional. The court stated:
 That act, however [in Le Maire], provided that it should take effect and be in force from and after its passage. It was a complete act, and went into effect without regard to any election, but it simply provided that, upon the petition of not less than 100 qualified electors of any one county, the board might call an election of all the legal voters in the county. And if a majority voted for the county school district, the county board of education should then enter an order, etc.
 But [the] act . . . providing for a stock law in Monroe County, provides: "In the event the majority of the voters voting at said election shall vote `For stock law,' as shown by said certificates of said election commissioners, the county court of Monroe County shall, on the first day of its July term, 1925, enter an order upon the county court records of said county, declaring this act adopted and in full force and effect, and this act shall, from and after the date of said order of said county court, to-wit, the first Monday in July, 1925, take effect and be in full force and effect. . . .
 This act did not go into effect merely by its passage by the Legislature, but it is expressly stated that it shall go into effect when a majority have voted for the law and the county court has made an order. . . . This law violates that provision of the Constitution which says no measure shall be submitted to the people by the General Assembly except a proposed constitutional amendment or amendments as provided for in this Constitution.
 . . . . The Constitution prohibits the Legislature from submitting any measure. Here was a measure submitted to the people, a bill to become a law only when a majority of the people had voted for it and there had been an order of the county court, as provided for in the act. The provision of the Constitution is plain and unambiguous, and that provision prohibits submitting measures like this to the people to become effective as a law only when adopted by the people.
Id. at 1104-1106.
It appears from the ruling in Simpson that the very efficacy of an act of the General Assembly may not be made to depend upon an election of the people.
The second case requiring discussion is Stockburger v. Cruse,191 Ark. 822, 88 S.W.2d 70 (1935), in which a discharged policeman sued claiming that his discharge was in violation of the recently passed civil service law. The law contained a provision requiring a local election to invoke the provisions of the act in a particular locality. The court held that the law was not yet in effect pursuant to such an election at the time of the police officer's discharge, and thus he was not entitled to relief. The court went on to hold, however, that the General Assembly's provision for a local election prior to the act's effectiveness in a particular locale did not violate the provision of Amendment 7 quoted above, stating:
 The Legislature did not attempt, by the section of the act quoted, to submit the act to the people, but simply recognized the constitutional right of municipalities to regulate their local affairs by a majority vote of the qualified electors of the municipality. The act was general in its scope, but, by § 18, could be localized so as to meet the needs of the individual municipalities of the State. This section was in recognition of Amendment No. 14 to the Constitution prohibiting the General Assembly from passing any local or special act, and had in mind also that section of Amendment 7, which reserves to municipalities and counties the right to enact local and special legislation. This being the purpose and effect of § 18, there was therefore no violation of the inhibition on the Legislature contained in the section of the I R Amendment above quoted.
191 Ark. at 825.
The execution or implementation of a general law, complete in itself and effective upon passage, thus may be constitutionally submitted to the voters of a particular locality, in order to determine its effectiveness therein. According to Stockburger, such a submission does not violate that provision of Amendment 7 quoted above. This conclusion appears consistent with the plain language of the Amendment 7 prohibition, which prohibits only a referral to "the people." It has been held that the term "the people" refers to the voters of the entire state and not to a fraction thereof. See generally, Black's Law Dictionary (5th Ed. 1979) at 1022; Anaconda-Deer Lodge County v. Lorello, 181 Mont. 195,592 P.2d 1381 (1979); and Wyatt v. Larimer W. Irr. Co., 1 Colo. App. 480,29 P. 906 (1892).
The holding in Stockburger under the pertinent language of Amendment 7 is also consistent with a separate line of constitutional inquiry and jurisprudence. Questions such as yours are often analyzed to determine whether there has been an "unlawful delegation" of legislative authority.[2] A long line of Arkansas cases establish the proposition that although the General Assembly cannot delegate the power to make laws, it can make a law to delegate the power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. See e.g., Boyd v. Bryant, 35 Ark. 69 (1879); McArthur v.Smallwood, 225 Ark. 328, 281 W.E.2d 428 (1955); Venhaus v. State ex rel.Lofton, 285 Ark. 23, 684 S.W.2d 252 (1985).
It has also been specifically held that the "General Assembly can enact a law and provide for operation under it to depend upon a contingency or condition, such as a favorable vote of the electors." Swanberg v. Tart,300 Ark. 304, 778 S.W.2d 931 (1989) (act of General Assembly providing for Sunday horse-racing in Hot Springs only after vote of the local electorate not an unlawful delegation). See also, Boyd v. Weiss,333 Ark. 684, 971 S.W.2d 237 (1998) (act authorizing an additional one cent sales tax in Texarkana (in lieu of state income tax) only upon local approval of the electorate not an unlawful delegation). Neither of these cases, however, discusses the Amendment 7 prohibition set out above, each turning instead upon the "unlawful delegation" doctrine. In addition, both the Swanberg and Weiss decisions involved a local, as opposed to a statewide, election to determine the act's effectiveness. See note 2,supra. I have found only one case addressing the Amendment 7 prohibition with reference to a statewide vote of the people, and it is the third case requiring discussion.
In Fulkerson v. Refunding Board of Arkansas, 201 Ark. 957, 147 S.W.2d 980
(1941) at issue was an act passed by the General Assembly to refund the state's outstanding bonded road indebtedness. See Acts 1941, No. 4. The act provided for the appointment of a new "Refunding Board," set the Board's duties, powers and funding sources, and also prescribed a number of other details related to the issuance of the bonds, the duties of other state officials, and the repeal of other previously enacted laws. One of the provisions of the act conditioned the issuance of the bonds on a favorable vote of the people of the state. Acts 1941, No. 4, § 21. It was alleged that this section of the act violated the language of Amendment 7 quoted above. The court responded thusly:
 We are of the opinion also that § 21 of act No. 4 does not constitute a delegation of legislative authority to the people; nor is it violative of that provision of Amendment No. 7 which prevents the General Assembly from referring any measure to the people. Section 21 does provide that "No bonds shall be issued under this act except by and with the consent of a majority of the qualified electors of the state voting on the question at a special election called for that purpose." It is not intended by this provision to have the electors of the state determine whether act No. 4 shall be a law. It is now a law. Its purpose is, rather, to determine whether it is the will of the people that the provisions of the law be availed.
201 Ark. at 965.
This holding appears to be consistent with the holding in Simpson v.Teftler, supra, to the effect that the legislature cannot delegate to the people the power to determine a law's effectiveness. The General Assembly can, however, according to these cases, enact a complete law, effective upon passage, and condition the implementation of some portion of the law upon a vote of the people. There appear to have been other provisions of Act 4 of 1941, analyzed in Fulkerson, which would have remained effective even upon the failure of the electorate to approve the bonds. This may have been an important feature influencing the court's decision.[3]
This feature may be missing from any proposed legislation to refer the issue you describe. An increase in the state sales tax is a fairly straightforward legislative matter. Although you have not presented me with any proposed legislation in this regard, it occurs to me that without the required affirmative vote of the people, there would be little if any remaining efficacy to such a measure. In other words, the entire operative effective of such an act would depend upon the vote of the people. This, in my opinion, would contravene the prohibition in Amendment 7.
In my opinion, therefore, Amendment 7 appears to stand as a clear prohibition against the action you suggest.
Of course, since the adoption of Amendment 7, several constitutional provisions have been adopted which require an affirmative vote of the people in certain instances. Most notable among these are: Arkansas Constitution, Amendment 19 (codified at art. 5, § 38) (requiring a super-majority vote of the General Assembly or approval of the qualified electors in order to increase certain taxes levied at the time of passage of Amendment 19);[4] Amendment 20 (requiring an affirmative vote of the people prior to the issuance of bonds or evidences of indebtedness pledging the faith and credit of the state or any of its revenues); Amendment 65, § 2 (b) (which would require a popular vote for revenue bonds issued for certain types of projects); and Amendment 74 (b)(4) (authorizing the General Assembly to by law propose an increase or decrease in the uniform rate of tax levied in school districts and to submit the question to the electors of the state). These provisions give constitutional sanction to legislative acts referring the stated issues to a vote of the people. It does not appear, however, that any of these specific grants of authority for a vote of the people apply to the issue you raise, which is the increase of the state sales tax.
Absent such specific constitutional sanction, in my opinion the General Assembly is prohibited by the relevant language in Amendment 7 from "referring" an entire legislative act to the people for their approval or rejection. Of course, the people retain their right, as always, to refer acts passed by the General Assembly to a vote of the people under Amendment 7. They have ninety days from the final adjournment of the legislature in which to do so. See Amendment 7 ("State Wide Petitions" "Referendum") and Fulkerson v. Refunding Board, supra.
Question 2 — If a sales tax increase can be referred to the voters, canit be done in a special election?
It is unnecessary to address this question in light of my response to your first question.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] The legislature is empowered to submit three constitutional amendments each biennium under Arkansas Constitution, art. 19, § 22, and is specifically empowered by Amendment 70 to submit an additional amendment relating to the salaries of certain constitutional officers. Amendment 70, § 2.
[2] Although in many cases addressing this issue, no discrete constitutional provision is cited as containing this prohibition, reference is sometimes made to Arkansas Constitution, art. 5 § 1 (the "legislative power of this State shall be vested in a General Assembly . . .) see Sparling v. Refunding Board, 189 Ark. 189, S.W.2d (1934); and to Amendment 7 ("[t]he legislative power of the people of this State shall be vested in a General Assembly . . . but the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution . . . and . . . to approve or reject at the polls any entire act. . . ."). See e.g. Wenderoth v. City of Ft. Smith,251 Ark. 342, 344-345, 472 S.W.2d 74 (1971). Reference is also sometimes made to the "separation of powers" doctrine contained in Arkansas Constitution, art. 4, §§ 1
and 2. See e.g., Curry v. State, 279 Ark. 153, 649 S.W.2d 833
(1983). A host of Arkansas cases approve the principle, under this "unlawful delegation" doctrine, that an act of the General Assembly may provide for a local election to determine an act's implementation and effectiveness in a particular locale. See e.g., Le Maire v. Henderson,174 Ark. 936, 298 S.W. 327 (1927); Browning v. Waldrip, 169 Ark. 261,273 S.W. 1032 (1925); Summers v. Road Improvement District No. 16,160 Ark. 371, 254 S.W. 696 (1923); Miller v. Witcher, 160 Ark. 479,254 S.W. 1063 (1923); Capps v. Judsonia and SteprockRoad Improvement District, 154 Ark. 46, 242 S.W. 72
(1922); Thompson v. Trice, 145 Ark. 143,223 S.W. 367 (1920); Van Hook v. Wallace, 143 Ark. 203, 220 S.W. 37 (1920);Fenolio v. Sebastian Bridge District, 133 Ark. 380, 200 S.W. 501 (1917);Harrington v. White, 131 Ark. 291, 199 S.W. 92 (1917); and Little Rockv. North Little Rock, 72 Ark. 195 (1904). See also generally, 16 C.J.S.Constitutional Law § 167 (with some divergent opinion, "although the legislature may not, in the absence of constitutional authorization, submit to the voters of the state the question of the adoption of a law, it may make the local application of a completely enacted general law subject to local approval or make the operation of a special local law dependent on approval of the voters of the territory in which the statute is to operate.")
[3] Admittedly, however, many of the provisions of the 1941 act would have failed of purpose without the affirmative vote of the people. I cannot help but believe, additionally, that the Fulkerson court was influenced by the fact that the act at issue represented the third try to refund outstanding highway indebtedness at a crucial time in the state's financial history. There was a scathing concurrence by Chief Justice Griffin Smith who stated that "the General Assembly was without power to refer Act 4." Id. at 978. Additionally, the court in Fulkerson could not rely on the separate authority of Amendment 20 for a vote of the people (which is the usual case with a state-wide bond issue) because the bonds at issue in Fulkerson were "refunding bonds" and apparently came within the exception in Amendment 20 for bond issues to refund outstanding indebtedness of the state incurred prior to passage of Amendment 20. See
generally Matthews v. Bailey, Governor, 198 Ark. 830, 131 S.W.2d 425
(1939) and Matthews v. Bailey, Governor, 198 Ark. 703, 131 S.W.2d 1006
(1939). For these reasons, I frankly consider the court's ruling inFulkerson to be "sui generis" (restricted to its own facts) in discussing the Amendment 7 prohibition.
[4] This provision has no applicability to sales taxes. See Miller v.Leathers, 311 Ark. 372, 843 S.W.2d 850 (1992).